UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CARLA UNDERWOOD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:18-cv-017 |
| | ) | Judge Phillips |
| DYNAMIC SECURITY, INC. and IAN CONROY, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Carla Underwood asserts claims of sexual harassment, retaliation, and false imprisonment arising from her employment with defendant Dynamic Security, Inc. ("Dynamic Security"). Dynamic Security has filed a motion to dismiss [Doc. 31] part of plaintiff's retaliation claim to the extent it stems from a complaint of sexual harassment based on sexual orientation. Dynamic Security has filed briefs in support of this motion [Docs. 32, 41] and plaintiff has responded [Doc. 39].

For the reasons set forth herein, defendant's motion to dismiss [Doc. 31] is **GRANTED**.

**I. Relevant Facts**[1]

Plaintiff began working for Dynamic Security on January 6, 2016, as a security officer assigned to the Hardin Valley campus of Pellissippi State Community College [Doc. 27 at ¶¶ 12, 14]. Plaintiff is lesbian [*Id*. at ¶ 1]. Plaintiff's direct supervisor was Angela Garrett, whom plaintiff believes to be lesbian or bisexual [*Id*. at ¶¶ 15—16].

Plaintiff claims Ms. Garrett "flirted" with her and harassed her "on account of [her] sex and/or sexual orientation" [*Id*. at ¶ 17]. In support of this assertion, plaintiff claims Ms. Garrett punched her in the arm, kicked her in the back of the legs, and groped her breast [*Id*. at ¶ 18]. Plaintiff protested this behavior, but Ms. Garrett "continued her conduct, unabated" [*Id*. at ¶ 18]. Comparing Ms. Garrett's conduct toward a male employee, plaintiff believes the difference "was due to Garrett's sexual orientation (lesbian or bisexual) and her resulting desire to actively 'flirt' with and/or sexually pursue [plaintiff] on account of [plaintiff's] sex and/or sexual orientation" [*Id*. at ¶ 19]. Plaintiff complained to Dynamic Security about Ms. Garrett's unwanted attention and Dynamic Security reassigned plaintiff to the Blount County campus of Pellissippi State Community College in August 2016 [*Id*. at ¶¶ 20, 23].

At the Blount County campus, plaintiff was supervised by J.T. Gibson, who also sexually harassed plaintiff [*Id*. at ¶¶ 24—25]. For example, Mr. Gibson repeatedly invited plaintiff to come to his house and "perform sexual acts with/on him," made "thinly-veiled

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in the first amended complaint [Doc. 27] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

sexual overtures," and inappropriately touched her [*Id*. at ¶¶ 26—28]. Plaintiff complained about Mr. Gibson's conduct to Dynamic Security several times [*Id*. at ¶¶ 29—30]. At a June 2, 2017 meeting, a Dynamic Security office manager "lambasted" plaintiff for contacting Human Resources seven times to report sexual harassment and the company's "mishandling" of her prior complaints of sexual harassment [*Id*. at ¶¶ 33—34, 36]. Dynamic Security then terminated plaintiff's employment [*Id*. at ¶ 39].

Plaintiff's claim of hostile work environment harassment relates solely to the conduct by Mr. Gibson and she describes the harassment as "on account of her sex" [*see Id.* ¶¶ 60—68]. Plaintiff's retaliation claim asserts that she repeatedly reported Mr. Gibson's conduct to Dynamic Security [*Id.* at ¶ 71] and that she "repeatedly protested and/or attempted to protest Dynamic Security's mishandling of [her] sexual harassment claim(s) against Garrett" [*Id.* at ¶ 73]. Thus, she alleges that she was terminated in retaliation for this protected conduct – "reporting Gibson's sexual harassment and protesting Dynamic Security's mishandling of Garrett's harassment" [*Id.* at ¶ 76]. Both plaintiff's sexual harassment and retaliation claims are asserted as violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. sec. 2000e, *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. Sec. 4-21-401, *et seq.*[2]

---

[2] Plaintiff asserts a claim of false imprisonment against defendant Ian Conroy [Doc. 27 at ¶¶ 81—84], which is not pertinent to the instant motion.

## II.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense."  *Id.* at 679.

**III. Analysis**

Title VII prohibits discrimination in employment "because of such individual's … sex." 42 U.S.C. § 2000e-2(a).[3] The scope of by that prohibition – "because of … sex" – has been, and continues to be, the subject of many conflicting court opinions and forms the nexus of dispute for the pending motion.

It is well settled that sexual harassment that creates a hostile and abusive working environment violates Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). It is also settled that same-sex harassment violates Title VII as long as the harassment constitutes "discrimination … because of … sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80—81 (1998). Whether a claim of harassment based on sexual orientation falls within Title VII's prohibition against discrimination "because of … sex" has produced conflicting and evolving decisions among the circuits. *See, e.g., Gilbert v. Country Music Ass'n, Inc.*, 432 F. App'x 516, 519 (6th Cir. 2011) ("Under Title VII, 'sexual orientation is not a prohibited basis for discriminatory acts'") (quoting *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir.), *cert. denied*, 138 S. Ct. 557 (2017) ("Our binding precedent forecloses such an action" for discrimination because of sexual orientation); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) ("we regard it as settled law that … Title VII does not proscribe harassment simply because of sexual orientation");

---

[3]Similarly, the THRA prohibits employment discrimination "because of … sex." Tenn. Code Ann. § 4-21-401(a)(1). THRA claims are analyzed in the same way as claims under Title VII. *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006).

5

*Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 290 (3rd Cir. 2009) ("Congress chose not to include sexual orientation harassment in Title VII"); *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996) ("Title VII does not afford a cause of action for discrimination based upon sexual orientation"); *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005) ("Title VII's protections … do not extend to harassment due to a person's sexuality"); *but see Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 341 (7th Cir. 2017) (en banc) ("we conclude today that discrimination on the basis of sexual orientation is a form of sex discrimination"); *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108 (2nd Cir. 2018) (en banc) ("we now hold that Title VII prohibits discrimination on the basis of sexual orientation as discrimination 'because of … sex'").

Dynamic Security has moved to dismiss part of plaintiff's retaliation claim [Doc. 31]. Specifically, Dynamic Security relies on established Sixth Circuit authority that, to the extent plaintiff's retaliation claim stems from a complaint of sexual harassment on the basis of sexual orientation, she does not state a claim for relief under Title VII or the THRA [Doc. 32 at pp. 6—7]. Dynamic Security correctly notes, "sexual orientation is not a prohibited basis for discriminatory acts" and thus a "claim premised on sexual-orientation discrimination … does not state a claim upon which relief may be granted" [*Id.* at p. 6 (quoting *Gilbert*, 432 F. App'x at 519, and *Vickers*, 453 F.3d at 762)]. Thus, because Title VII does not encompass discrimination based on sexual orientation, a complaint of sexual harassment based on sexual orientation cannot constitute protected activity for purposes of a retaliation claim. *Gilbert*, 432 F. App'x at 520 ("[b]ecause the conduct Gilbert opposed was not an 'unlawful employment practice,' … his retaliation claims must also fail"); *see*

6

42 U.S.C. sec. 2000e-3(a); *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3rd Cir. 2006) ("the anti-retaliation provision of Title VII protects … those who oppose discrimination made unlawful by Title VII").

Plaintiff does not dispute the Sixth Circuit authority on which Dynamic Security relies. Instead, she contends that a recent panel opinion from the Sixth Circuit, *EEOC v. R.G. & G.R. Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), implicitly overruled these prior cases and thus implicitly recognized a cause of action for discrimination and retaliation on the basis of sexual orientation [Doc. 39 at pp. 3—5]. Plaintiff bases this argument on the *R.G.* opinion's citation to a Seventh Circuit opinion, *Hively v. Ivy Tech Comm. Coll.*, 853 F.3d 339 (7th Cir. 2017), which explicitly recognized discrimination based on sexual orientation as encompassed by Title VII's prohibition against discrimination "because of … sex" [*Id.* at p. 4—5]. In reply [Doc. 41], Dynamic Security contends that *R.G.* did not – and could not – overrule prior Sixth Circuit precedent. A brief discussion of both cases is necessary to explain why Dynamic Security's argument is correct.

In *Hively*, the en banc Seventh Circuit considered the claim of an "openly lesbian" adjunct college professor who was repeatedly rejected for full time positions and she believed she was rejected because of her sexual orientation. 853 F.3d at 341. After a review of existing precedent, including cases from other circuits and the Supreme Court, the *Hively* court considered "what it means to discriminate on the basis of sex, and in particular, whether actions taken on the basis of sexual orientation are a subset of actions taken on the basis of sex." *Id.* at 343. The court concluded, "discrimination on the basis

7

of sexual orientation is a form of sex discrimination" in violation of Title VII and overruled prior Seventh Circuit opinions to the contrary. *Id.* at 341, 351.

A panel of the Sixth Circuit faced a different question in *R.G.*, that is, whether a transgender employee's claim that she was fired for failure to conform to sex stereotypes stated a claim of sex discrimination in violation of Title VII. 884 F.3d at 571. The *R.G.* court reviewed the Supreme Court's conclusion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989), that Title VII's reach included discrimination on the basis of "sex stereotypes," such as not being feminine enough. *R.G.*, 884 F.3d at 571—72. Based on *Price Waterhouse*, the Sixth Circuit had concluded previously that there was no "reason to exclude Title VII coverage for non sex-stereotypical behavior simply because the person is a transsexual" or demonstrates "gender non-conforming behavior." *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004). Following these precedents, the *R.G.* court held that "Title VII protects transgender persons because of their transgender or transitioning status, because transgender or transitioning status constitutes an inherently gender non-conforming trait." 884 F.3d at 577.

The *R.G.* opinion did cite to *Hively*, but noted that *Hively* addressed "a different question than the issue before this court." *Id.* at 575. More significantly, for purposes of this motion, the *R.G.* opinion described *Vickers* as not controlling because it "concerned a different legal question … whether Title VII forbids sexual orientation discrimination." *Id.* at 579. The *R.G.* court continued:

> While it is indisputable that '[a] panel of this Court cannot overrule the decision of another panel' when the 'prior decision [constitutes] controlling authority,' …one case is not 'controlling authority' over another if the two

8

> address substantially different legal issues. …After all, we do not overrule a case by distinguishing it.

*Id*. at 580 (internal citations omitted).

Thus, the *R.G.* court addressed a different legal issue than that presented by *Vickers*, explicitly acknowledged its distinction from *Vickers*, and did not – and could not – overrule *Vickers*. It follows then that *R.G.* did not alter the law in the Sixth Circuit with respect to Title VII claims of discrimination based on sexual orientation. Absent contrary guidance from the Sixth Circuit or the Supreme Court, a claim of discrimination based on sexual orientation does not state a claim for relief under Title VII and this Court is obligated to follow that precedent. Further, because the conduct plaintiff opposed – Ms. Garrett's alleged harassment because of plaintiff's sexual orientation – was not prohibited by Title VII, plaintiff's retaliation claim based on that conduct must also fail. *Gilbert*, 432 F. App'x at 520; *see Clemons v. City of Memphis*, No. 16-cv-02333-JPM-cgc, 2016 WL 7471412, at *3 (W.D. Tenn. Dec. 28, 2016) ("[u]ntil the Sixth Circuit or the Supreme Court provides further commentary on this issue, this Court is bound by Sixth Circuit precedent."). To the extent that plaintiff's retaliation claim is based on her complaint of harassment due to her sexual orientation, plaintiff fails to state a viable claim for relief under controlling Sixth Circuit and Supreme Court authority.

The Court must make plain that this opinion does not completely eliminate plaintiff's claim of retaliation. As noted initially, plaintiff alleges that Ms. Garrett harassed her because of plaintiff's "sex and/or sexual orientation" [Doc. 27 at ¶¶ 17, 19]. However, plaintiff's retaliation claim is based on her complaints of Mr. Gibson's harassment and the

9

purported mishandling of her complaints of harassment by Ms. Garrett [*Id.* at ¶¶ 73, 76]. The Court accepts the allegations of the amended complaint as true for purposes of the instant motion. The Court does not have testimony or exhibits as to the details of plaintiff's complaints about Ms. Garrett or what Dynamic Security understood to be the basis of her complaints. Thus, the Court does not intend to predetermine the scope of plaintiff's testimony.

Therefore, for all the reasons set forth herein, the defendant's motion to dismiss in part [Doc. 31] is **GRANTED**.

IT IS SO ORDERED.

                                              s/ Thomas W. Phillips
                                            SENIOR UNITED STATES DISTRICT JUDGE